IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAULA S. SAWYER, Acting Regional Director of the Fourteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, | 4:19-CV-3016 |
| Petitioner, | |
| vs. | ORDER |
| NOAH'S ARK PROCESSORS, LLC d/b/a WR RESERVE, | |
| Respondent. | |

The Court previously found the respondent, Noah's Ark Processors, to be in contempt of court for its noncompliance with the Court's order awarding injunctive relief to the National Labor Relations Board. Filing 36; *see* filing 21. The events leading up to that are summarized in the Court's previous orders, and need not be reiterated here. *See* filing 21; filing 36.

At that time, the Court observed that civil contempt may be employed either coercively or to compensate the complainant for losses sustained, or both. Filing 36 at 12-13 (citing *Chicago Truck Drivers Union Pension Fund v. Brotherhood Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000)); *see Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 826-28 (1994). And the Court announced its intent to award compensatory damages for the costs associated with prosecuting the contempt. Filing 36 at 13.

Where compensation is intended, a fine is imposed payable to complainant. *Chicago Truck Drivers*, 207 F.3d at 505. Compensatory damages "must of course be based on evidence of complainant's actual loss." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947). For instance, an

award of reasonable attorney's fees and expenses incurred in seeking to enforce the decree is one form of compensatory relief that is well within a district court's remedial discretion in civil contempt proceedings. *Jake's, Ltd., Inc. v. City of Coates*, 356 F.3d 896, 900 (8th Cir. 2004).

The Board has moved for its own costs and expenses as well as costs and expenses for the United Food and Commercial Workers Local Union No. 293, the complainant in the underlying Board proceeding. Filing 43. Although Noah's Ark disagrees with the Court's finding of contempt, it does not dispute—for purposes of the present motion—that the Board *may* be awarded such damages. *See* filing 48. Noah's Ark does contend, however, that the Union may not be awarded damages. Filing 48 at 2-15. And Noah's Ark disputes the amounts the Board seeks. Filing 48 at 15-35.

COMPENSATORY DAMAGES FOR UNION

The parties do not appear to disagree with the general principle that the Court's contempt authority does not support awarding damages to non-parties to the proceeding. *See, e.g., Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1131 (9th Cir. 2013); *NLRB v. Local 3, Int'l Brotherhood of Elec. Workers*, 471 F.3d 399, 408 (2d Cir. 2006); *Roe v. Operation Rescue*, 919 F.2d 857, 874 (3d Cir. 1990). And the Court's previous order noted that authority. Filing 36 at 14 n.5. The Board contends, however, that pursuant to *Ahearn*, the Union *is* a party to the proceedings for these purposes. Filing 43 at 5-9. The Board's reading of *Ahearn* is persuasive.

*Ahearn* involved union protest activities at a grain terminal in Washington. *Id*. at 1126. The union and the grain terminal disagreed about whether a collective bargaining agreement required the use of union labor, and the grain terminal operator decided to hire non-union workers. *Id*. The union began picketing and allegedly destroyed property and harassed the grain

terminal's employees. *Id*. The grain terminal filed charges with the Board, which then sought injunctive relief on the grain terminal's behalf in U.S. District Court pursuant to 29 U.S.C. § 160(j) & (l). *Ahearn*, 721 F.3d at 1126. The district court issued a temporary restraining order and then, when that order was violated, found the union to be in contempt. *Id*. at 1126-27. The district court awarded compensatory damages to the Board, the grain terminal, local law enforcement (who had responded to the unrest) and a railroad (whose property had also been damaged by picketers). *Id*. at 1127, 1131. The union appealed. *Id*. at 1125.

The Ninth Circuit agreed with the Union that contempt sanctions are only available as compensation when awarded to the prevailing party in the litigation, and that neither the law enforcement agencies nor the railroad were parties. *Id*. at 1130-31. Nor did damages to those non-parties directly serve to enforce the injunction. *Id*. at 1131. But the Court affirmed damages to the grain terminal. *Id*. at 1128. Despite the fact that the federal court case was technically brought by the Board against the union, the Court of Appeals reasoned that as the charging party in the underlying Board proceeding, the grain terminal was a "prevailing party" for purposes of the National Labor Relations Act. *Id*.

The same reasoning applies here. Because this proceeding was initiated by the Union in front of the Board, the Union is and has been a "party" for purposes of the National Labor Relations Act. *See* 29 C.F.R. § 102.1(h). The Court is unpersuaded that the labels affixed to the participants when the Board commences an enforcement action in federal court pursuant to § 160(j) serve to alter the underlying reality that the Union is the original complainant who initiated these proceedings. And the Court's exercise of contempt authority to vindicate the claims that the Union initially prosecuted makes it a "prevailing party" for these purposes. *See Ahearn*, 721 F.3d at 1128.

Noah's Ark attempts to distinguish *Ahearn* by noting that in that case, the Board sought injunctive relief pursuant to both § 160(j) (which permits the Board to ask for an injunction against unfair labor practices) and § 160(l) (which permits the Board to ask for an injunction against boycotts and strikes intended to force recognition of uncertified labor organizations). Filing 48 at 12. In this case, on the other hand, the Board sought relief only under § 160(j). (Which isn't surprising because § 160(l) isn't relevant on these facts.) Noah's Ark argues that §160(j) "does not grant the Court any jurisdiction beyond the granting of temporary relief to the [Board]." Filing 48 at 12-13.

But that distinction is not persuasive. To begin with, nothing in *Ahearn* indicates that it was contingent upon § 160(l) in particular. *See* 721 F.3d at 1128-29. And that makes sense, because the authority conferred on the Court by the two provisions is effectively identical. *Compare* § 160(j) (the Court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper"), *with* § 160(l) (the Court "shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law").

And more fundamentally, the authority at issue here isn't statutory, because we're not dealing with the initial injunction. Rather, at issue here is the scope of the Court's contempt power—its inherent authority "to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chicago Truck Drivers*, 207 F.3d at 504. Noah's Ark does not dispute application of the Court's contempt power to compensate a prevailing party. And the Court is not persuaded that the unusual procedural vehicle that brings the Board here as the petitioner, even though the Union started the proceeding, should preclude the Union from being compensated for its efforts to enforce an order that was only entered because of what the Union started.

AMOUNT OF AWARD

Noah's Ark also takes issue with the awards the Board is seeking. Noah's Ark contends that the Board's proposed hourly rates for its counsel are excessive, and that both the Board's and the Union's number of hours expended are excessive.[1]

Noah's Ark's argument is premised on the "lodestar" method for determining a reasonable attorney's fee award. *See Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018). The lodestar is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates. *Id*. The party seeking fees bears the burden of establishing entitlement to an award and documenting the appropriate hours and hourly rates. *Orduno v. Pietrzak*, 932 F.3d 710, 719-20 (8th Cir. 2019). Courts consider factors such as time, skill, and labor required; customary fees; the amount involved and the results obtained; and the experience, reputation, and ability of the attorneys. *Johnson Tr. of Operating Engineers Local #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 526 (8th Cir. 2020).

When determining whether the hours claimed are reasonable, the Court should weigh those hours against its own knowledge, experience, and expertise of the time required to complete similar activities. *Harter*, 894 F.3d at 889. And similarly, when determining reasonable hourly rates, the Court may rely on its own experience and knowledge of prevailing market rates. *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019). The Court must provide a "concise but clear" explanation of the fee award. *Brewington v. Keener*, 902 F.3d 796, 805 (8th Cir. 2018).

---

[1] Noah's Ark doesn't seem to take issue with the hourly rates sought for the Union's counsel, so that doesn't require discussion.

*Hourly Rates*

To begin with, Noah's Ark points out—correctly—that the hourly rates sought for the Board exceed local market rates for Lincoln, Nebraska.[2] The Board does not appear to disagree with the general principle that a reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated. Filing 43 at 1; *see Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). So, the Board's request presents counsel's rates from the "Laffey matrix" of rates for government counsel of varying experience in the District of Columbia, adjusted by using the locality rates added to government salaries in different metropolitan areas. *See* filing 43 at 2-3.

The Court is not persuaded by that method. Whatever the merits of the "Laffey matrix" might be for the District of Columbia—and the foundational basis for that isn't overwhelming—the Court has been provided with no evidentiary basis to accept that the federal locality pay areas provide a sound method for adjusting those rates. Federal locality pay is meant to adjust government salaries for the *cost of living* in different areas, but there is no reason to believe that those adjustments correspond to the *cost of legal services*. For instance: in 2020, the locality adjustment for the District of Columbia is 30.48 percent, for Boston is 29.11 percent, and for Chicago is 28.59 percent. But the adjustment for the State of Alaska is 29.67 percent . . . and the Court seriously questions whether the prevailing market rates for legal services are functionally identical for all of those areas.

---

[2] Although a hearing was held at the courthouse in Omaha, Nebraska for the convenience of the respondent's CEO, this case was filed in Lincoln and adjudicated there, making that the relevant market for these purposes.

The Court is more persuaded by the evidence that at one large, capable Omaha law firm, the rates for federal court litigation range "from $240 to $400 for partners (with $345 to $365 being the most common rates) and from $190 to $235 for associate attorneys." Filing 44 at 23. That's consistent with the Court's own experience (with some small adjustment because this case is in Lincoln, not Omaha.) But those rates, too, are substantially less than what the Board is seeking. *See* filing 43 at 3. Based on that evidence and the Court's own experience—and given counsel's demonstrated competence and expertise with labor relations and the National Labor Relations Act—the Court will award fees to the Board for Mr. LeMaster's services at a rate of $300 per hour, for Ms. Radzin at $250 per hour, and Ms. Covel at $200 per hour.

*Hours Expended*

Noah's Ark also, somewhat briefly, disputes the time that counsel claim to have spent on this matter. Filing 48 at 31-34. Noah's Ark starts by arguing that it shouldn't have taken three Board lawyers to litigate this matter. Filing 48 at 31. But the number of lawyers is beside the point—presumably, one lawyer working alone would have had to spend more time on the matter than when some of the work was done by others. The issue is the time reasonably expended, not the number of people who expended it.[3]

---

[3] Noah's Ark also asserts that

> Government attorneys are generally not limited in time due to financial limitations in the same way that private attorneys are. Because the NLRB was not billing a client, they were not forced to ensure certain efficiencies were in place to minimize the time spent during the prosecution of this case.

Filing 48 at 31. But that cuts both ways—it's also true that because government attorneys aren't billing by the hour, they have no incentive to spend more time than necessary on a

But to that issue, Noah's Ark contends that counsel for the Board and the Union shouldn't be able to count all the time they spent communicating with one another. Filing 48 at 32-33. The Court is unpersuaded. To start, with respect to the Union: it seems self-evident that for a proceeding of this nature, communication and coordination is necessary between the Board's counsel and the Union's counsel—who was, it should be remembered, involved on a day-to-day basis with the "negotiations" at the heart of the respondent's contumacious conduct. That's more akin to counsel communicating with a client or a fact witness than simply lawyers talking amongst themselves, and there's no basis to think it was unreasonable.

But beyond that, it's also reasonable for lawyers to talk among themselves. Nor is the Court persuaded by Noah's Ark's suggestion that some of the Board's line items shouldn't have taken as long as they did. *See* filing 48 at 32. The Court declines Noah's Ark's invitation to wander into the weeds to parse the Board's records in 6 minute increments: the Court has no basis to doubt that those records reflect time that was *actually* expended, and the question is whether it was *reasonably* expended, not whether it was perfectly efficient or absolutely necessary. And having reviewed the Board's excellent work product, the Court finds it reasonable that its counsel spent their time reasonably—those hours are visible on the page.[4]

---

matter. And in the Court's experience, government attorneys are usually limited in the amount of time they can dedicate to a matter by the number of other matters that require their attention. But that is neither here nor there, because the issue in this case is the specific request made by counsel with respect to this single matter, and whether it is reasonable.

[4] The Court is somewhat sympathetic to the suggestion that the hearing the Court held didn't require the attendance of two Board lawyers and one Union lawyer. Filing 48 at 33. Noah's Ark points out that "only one of the [Board] attorneys spoke on the record during the hearing, and the [Board] has not produced any evidence demonstrating why the appearance of two

Finally, Noah's Ark takes issue with what it says are insufficiently detailed entries on the Board's timesheets: Noah's Ark says that the Board hasn't complied with the Court's guidelines regarding such evidence. Filing 48 at 34-35 (citing NECivR 54.4). Noah's Ark also points to cases in which fee requests were reduced because of vaguely described timesheet entries. *See H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991); *Tramp v. Associated Underwriters, Inc.*, No. 8:11-CV-371, 2019 WL 3068107, at *5 (D. Neb. July 12, 2019), *appeal docketed*, No. 19-2668 (8th Cir. Aug. 7, 2019).

But NECivR 54.4 provides guidelines, not rules, for supporting a motion for attorney's fees. *See id.* And this is not a complex, wide-ranging matter such as *Flygt* (which involved several years of antitrust litigation) or *Tramp* (which involved several years of civil rights litigation and a parallel state-court action to pierce corporate veils and enforce the judgment). So in this case, for instance, a line item such as "Research"—which might have been insufficient in another case—is nonetheless acceptable, because there was really only one thing to research. Accordingly, there is no mystery in this case, as there was in *Flygt*, as to whether counsel's records "were related to this litigation, much less the claims upon which [the movant] ultimately prevailed." *See* 925 F.2d at 260. The Court is satisfied with the records the Board has provided.

In sum, the Court finds that an award is appropriate to both the Board and the Union, and that the hours spent on this matter by the Board and the Union were reasonably expended, but that the hourly rates sought by the

---

[Board] attorneys was necessary or appropriate." Filing 48 at 33. But it must be remembered that the Court's order setting the hearing was broad, and that the respondent's CEO was commanded to personally appear. Filing 36. The hearing itself proved to be somewhat anticlimactic, but there was no way to know that ahead of time, and it wasn't unreasonable for the Board and Union to be present and prepared for contingencies.

Board are too high. Incorporating that adjustment, the Court will award damages as follows:

| Counsel | Hours | Hourly Rate | Costs | Sum |
|---------|-------|-------------|-------|-----|
| *The Board* | | | | |
| Dorit Y. Radzin | 110.2 | $250 | | $27,550.00 |
| William F. LeMaster | 69.5 | $300 | | $20,850.00 |
| Julie M. Covel | 27.6 | $200 | | $5,520.00 |
| **Total:** | | | | **$53,920.00** |
| | | | | |
| *The Union* | | | | |
| Blake & Ullig, P.A. | 117.2 | $125-195 | $217.30 | **$21,398.30** |

IT IS ORDERED:

1. The Board's Motion for Compensatory Damages (filing 43) is granted in part.

2. Noah's Ark must pay the Board $53,920.00 in attorney's fees on or before January 4, 2021.

3. Noah's Ark must pay the Union $21,398 in attorney's fees and costs on or before January 4, 2021.

4. Failure to comply with this order could result in additional sanctions.

Dated this 30th day of November, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge